FILED
SUPERIOR COURT
OF GUAM

2022 FEB 25 AM 9: 15

CLERK OF COURT

BY:_____

IN THE SUPERIOR COURT OF GUAM

MARTIN JOSEPH KENNEDY,

                                     Plaintiff,

          vs.

SUSAN MICHELLE KENNEDY,

                                  Defendant.

**Superior Court Case No. DM0083-18**

**DECISION AND ORDER RE MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT**

The Court here considers whether to hold Defendant Susan M. Kennedy (also referred to as "Shelly") in contempt of court for failing to abide by certain terms of the parties' Stipulated Interlocutory Divorce Decree. Having notified Shelly of the possible imposition of contempt and sanctions and having reviewed the parties' written and oral arguments, the Court determines that Shelly committed contempt of court and Plaintiff Martin Kennedy (also referred to as "Michael") is entitled to certain monetary losses caused by that contempt.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2020, the Court approved the parties' Stipulated Interlocutory Decree for Divorce. The Decree contains the following language concerning property distribution:

> III. REAL AND PERSONAL PROPERTY DISTRIBUTION: The Parties hereto represent that they are now in possession of or own certain assets and otherwise have already divided any community or separate property to their mutual satisfaction subject to the following allocation. The Parties have and hereby allocate the following community property acquired during the Parties marriage:
>
> a.      Thrift Savings Plan (TSP) in Plaintiff's name with an approximate value $144,447.20 as of January 1, 2016 to be evenly split. Plaintiff shall provide Defendant with a separate Order within thirty days allocating defendant's share to her;

b.      ROTH IRA in Defendant's name with an approximate value of $8,900.46 as of January 1, 2016 to be evenly split - Defendant shall provide Plaintiff with a separate Order within thirty days allocating Plaintiff's share to him;

c.      DoDEA FERS in Plaintiff's name with an approximate monthly amount due to Plaintiff of $615.86 as of January 1, 2016, to be evenly split - Plaintiff shall provide Defendant with a separate Order within thirty days allocating defendant's share to her;

d.      Thrift Savings Plan (TSP) in Defendant's name an approximate value of $248,730.85 as of January 1, 2016 to be evenly split - Defendant shall provide Plaintiff with a separate Order within 30 days allocating Plaintiff's share to him;

e.      DoDEA FERS in Defendant's name an approximate monthly value of $1,317.00 as of January 1, 2016, to be evenly split - Defendant shall provide Plaintiff with a separate Order within thirty days allocating Plaintiff's share to him.

Stip. Interlocutory Decree Divorce (Dec. 30, 2020).[1] The plain language of subsections (b), (d), and (e) obligated Shelly to provide form orders for her ROTH IRA, TSP, and DODEA FERS benefits which she agreed to share with Martin evenly. The decree further stipulates that "Full and proper execution and delivery shall be affected no later than fourteen (14) days after presentation of any such documents from one party to the other." Stip. Interlocutory Decree Divorce ¶ 11.

Eleven months after the decree, Martin requested that the Court issue an Order to Show Cause for Contempt. Martin claims that Shelly failed to comply with the above provisions and that she left Guam and started to receive 100% of her retirement benefits despite agreeing to turn half over to Martin.

Upon review of Martin's submission, the Court issued an OSC to Shelly to show cause why she should not be held in contempt for "Failure to transmit all documents for retirement accounts reflecting a spousal allocation as Ordered in the Stipulated Interlocutory decree and Final Decree." OSC re Contempt (Nov. 16, 2021). The Court set the hearing on the OSC for December 16, 2021, and allowed Shelly to file a written response. OSC re Contempt. Due to

---

[1] The Court takes judicial notice that thirty days from December 30, 2020, was Friday, January 20, 2021.

this Judge's personal emergency, that hearing was rescheduled to January 19, 2022. On that rescheduled date, counsel argued the merits of their positions. The Court also permitted supplemental submissions, but only Martin availed of that opportunity.

Turning to the substance of Shelly's response, Shelly contends she did in fact comply with the decree. She produced correspondence between her counsel, Attorney Curtis Van de veld, and Martin's counsel, Attorney Gary Gumataotao:

- In February 2021, Van de veld emailed Gumataotao that "We provided at the time of the submission of the Stipulated Interlocutory Judgment of Divorce the proposed FERS order for review. . . . I will inform my client to write a check to Martin for $4,450,23 (Section III(b)) for his share of the ROTH IRA. We will complete the TSP orders once received. Please advise if the proposed DODEA FERS order as drafted is acceptable." Opp. OSC, Ex. B at 9 (Dec. 9, 2021).

- Two months later in April 2021, Van de veld wrote to Gumataotao that he had partial re-drafts of the FERS orders, but he was still researching language for a completed order. Opp. OSC, Ex. B at 12.

- Later that month, Shelly wrote to her attorney that Martin agreed to "drop[] the FERS from the settlement with the understanding that I will transfer the $52,141.58 into his TSP account and write him a check for the Roth IRA. He is not asking for additional funds and wants all matters of the divorce to be settled ASAP. We are in agreement with this arrangement." Opp. OSC, Ex. B at 15.

- On May 5, 2021, Shelly clarified to her attorney that the agreement was that "neither of us will be awarded FERS retirement from the other (we are both dropping that part of the settlement). I will provide him a payment for his half of the Roth IRA." Opp. OSC, Ex.

B at 16. She also produced an email from Martin in which he related that the Roth IRA is connected to Shelly's Oklahoma retirement pension and that he agreed to drop the DODEA FERS funds from a division of community property. Opp. OSC, Ex. B at 17-18.

- Also on May 5, 2021, however, Martin wrote to his attorney that he had changed his mind about dropping the FERS issues. He additionally concurred with Shelly transferring her TSP shares directly to his account and agreed to accept a direct ROTH IRA payment. Opp. OSC, Ex. B at 21.

- In a final email dated May 5, 2021, Van de veld wrote to Gumataotao about the TSP and DODEA FERS issues. He presented a calculation whereby Martin's TSP account amount was deducted from Shelly's TSP account amount, then divided that by half, amounting to a sum of $52,141.83 to be transferred to Martin's account. As for the FERS Order, Van de veld represented that "FERS orders are complicated and a specialty among attorneys in preparing these orders, the content of which needs to be approved by the federal government Office of Personnel Management. The orders, unless approved, cannot go into effect." Opp. OSC, Ex. B at 25. Van de veld proposes a calculation method similar to the TSP accounts: instead of preparing a DODEA FERS order, incorporating a calculated amount and taking it out of the TSP funds exchange. According to Van de veld, "[t]his will reduce everything to one single order to TSP which can be done quickly and conclude this matter more easily." Opp. OSC, Ex. B. at 26.

- On June 1, 2021, Gumataotao confirmed his client's receipt of the ROTH IRA funds to Van de veld. Opp. OSC, Ex. B at 23.

The parties did not produce any further correspondence discussing Van de veld's May 5 proposal or the status of the required orders. However, both parties submitted a sample FERS

Order drafted by Gumataotao and entitled "Court Order Acceptable for Processing Dividing Federal Employee Retirement System (FERS) Pension," which appears to address Martin's benefits and obligations under the decree. Decl. Pl.'s Counsel, Ex. A (Feb. 1, 2022); Opp. OSC, Ex. C. Martin argues that Shelly never provided a similar, proper DODEA FERS order for her federal retirement benefits nor a proper Oklahoma order. Decl. Pl.'s Counsel. On the other hand, Shelly argues that this proposed DODEA FERS Order "reflects no signature by anyone, especially the proponent of the document nor a demand for signature after the document is fully prepared and addresses all the entire distribution." Opp. OSC at 2.

## II.    LAW AND DISCUSSION

### A. Notice Requirements Have Been Met.

As an initial matter, the Court addresses whether the strict notice and procedural safeguards required for finding a party in indirect contempt under 7 GCA § 34102(b) have been satisfied. Section 34102(b) requires that a notice of a contempt proceeding allow a reasonable time for the preparation of the defense. Moreover, section 34102(d) states that five calendar days' notice (excluding weekends and holidays) constitute sufficient reasonable notice.

Here, the Court initially gave Shelly over thirty days' notice of the contempt proceedings and an opportunity to respond in writing. With the rescheduling of the hearing, Shelly had a total of sixty-four days to prepare for the contempt hearing. The Court finds that Shelly had in excess of five calendar days' notice of the contempt proceeding, so the statutory time requirements have been satisfied.

### B. Shelly Has Failed to Comply with the Decree.

The scope of the OSC asked Shelly whether and why she failed to transmit documents for retirement accounts reflecting a spousal allocation as ordered in the Stipulated Decree. OSC re

Contempt. Shelly generally defends the OSC on the grounds that the documents could not be placed in final form for signature by her. Opp. OSC at 3.

Under Guam law, a party can be held in contempt of court when, by clear and convincing evidence, there is (1) a valid order, (2) knowledge of the order, (3) ability to comply with the order, and (4) a willful failure to comply with the order. *Rodriguez v. Rodriguez*, 2003 Guam 8 ¶ 15. Because the order at issue is a divorce decree to which both parties stipulated and the Court approved, elements one and two are met. Stip. Interlocutory Decree Divorce.

On the two remaining elements, there are three particular aspects of the decree which place an obligation on Shelly. Within thirty days of the decree, Shelly had to provide separate orders concerning her ROTH IRA, TSP, and the DODEA FERS benefits. Stip. Interlocutory Decree Divorce ¶ III(b), (d), (e). The correspondence between the parties indicates that the ROTH IRA account split is resolved. That leaves whether Shelly complied or could comply in producing a TSP Order and a DODEA FERS Order. As of present, the Court does not have evidence that Shelly provided these orders or could not comply. A February 2, 2021 email from Van de veld to Gumataotao asks Gumataotao to review "the proposed DODEA FERS order," but Shelly failed to show that such an order was provided or what it contained. Opp. OSC, Ex. B at 9. The Court recognizes that the parties exchanged correspondence and even noted the difficulty in preparing these orders, but the fact remains that a year after Shelly promised to provide these documents to Martin, she has not established that she did; and, what's more, she is now receiving 100% of the benefits she agreed to share.

Moreover, the Court has not received any credible argument that indicates Shelly could not comply. While the parties discussed re-negotiating these terms and the complex language of the relevant orders, there remains a lack of evidence that Shelly could not produce an order

similar to what Gumataotao drafted on Martin's behalf and which appears acceptable to Martin. The Court notes that Shelly did not take advantage of the supplemental briefing deadline to prove that she turned over any draft orders. The Court also notes that the paper trail on the parties' correspondence ends in June 2021--this leaves at least eight months in which there is no evidence that Shelly took further efforts to comply with the stipulated decree.

For these reasons, the Court must find that Shelly could comply and willfully failed to turn over the necessary retirement documents. Having found all of the prongs of contempt satisfied, the Court holds Shelly in contempt of court and subjects her to sanctions. Guam's contempt statute states: "Any person found guilty of a contempt of court pursuant to § 34102(b) is subject to the same penalties as a person found guilty of a petty misdemeanor." 7 GCA § 34101(b). For a petty misdemeanor crime, the Court may impose a term of imprisonment of no more than sixty days, a fine of $500.00, or "Any higher amount equal to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense by the offender." 9 GCA §§ 80.34(b), 80.50(e). The term "'loss' means the amount of value separated from the victim." 9 GCA § 80.50(e).

Martin seeks an award of attorney's fees and costs incurred in pursuing these contempt proceedings as a sanction. The Court finds that Shelly's contempt of court caused Martin an economic loss in attorney's fees expended to pursue Shelly's compliance. Therefore, Shelly must reimburse Martin for his attorney's fees and costs upon proof by Martin of such sum.

Martin also seeks an order of imprisonment. The Court declines to issue this Order, as other remedies will adequately address the contempt.

Finally, not sought by Martin but found to be an appropriate sanction by this Court is an award of benefits that Martin would have received had Shelly timely produced the TSP and

DODEA FERS orders. As the parties recognize in their correspondence, even if the necessary documentation had been submitted to the respective authorities for the even split disbursement of Shelly's benefits, the parties would be at the mercy of those agencies in terms of the timing and processing of the even split. Further, no evidence was presented as to the exact balance at stake. And a final issue is that the parties appeared to continue to negotiate enforcing the provision to provide the DODEA FERS order as late as May 2021. So while the Court is willing to award Martin his share of the benefits which the Court views as his loss caused by the contempt--and retroactive to a reasonable time when such distributions would have been made if timely submitted--the record is unclear as to the amount to which Martin would have received. Martin may provide further evidence supporting these amounts, if sought as a sanction by him.

## III.    CONCLUSION AND ORDER

The Court finds that Shelly committed contempt of court when she willfully failed to abide by the terms of the Stipulated Divorce Decree requiring her to provide orders concerning the even split of her TSP and DODEA FERS benefits. Within thirty days of this Decision and Order, Martin may provide: (1) a Statement of Fees and Costs; and (2) a proposed calculation of benefits to which he would be entitled had Shelly timely processed the TSP and DODEA FERS orders. Twenty-one days after Martin's statement, Shelly may reply on the reasonableness of Martin's submitted fees and costs and his proposed calculation. Martin may submit a final reply fourteen days after Shelly's response.

Finally, the Court reminds Shelly that she remains subject to further contempt sanctions until she comes into full compliance with the stipulated decree.

SO ORDERED this 25th day of February 2022.

_Elyze Iriarte_

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

**SERVICE** ⸱⸱⸱⸱ ⸱⸱⸱
I acknowledge that an electronic
copy of the original was e-mailed to:

_Gumataotao_
_Curtis_
_____
Date:_____Time: 2/25/22_____
**Joseph Bamba, Jr.**
_____
Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Gary W.F. Gumataotao, Esq., Law Offices of Gumataotao & Pole, P.C., for Plaintiff Martin
    Joseph Kennedy
Curtis C. Van de veld, Esq., The Vandeveld Law Offices, P.C. for Defendant Susan Michelle
    Kennedy